UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| IRFAN DEMIROVIC,<br><br>    Plaintiff,<br><br>v.<br><br>DAVID MOSS and MS. BISHOP,<br><br>    Defendants. | Civil Action No. 6:18-CV-193-CHB<br><br>**MEMORANDUM OPINION<br>AND ORDER** |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Irfan Demirovic is an inmate confined at the Grayson County Detention Center. Demirovic has filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983. [R. 1]  The Court has granted his motion to proceed *in forma pauperis* by separate Order [R. 9].

This matter is before the Court to conduct the initial screening required by 28 U.S.C. §§ 1915(e)(2), 1915A. *Hill v. Lappin*, 630 F. 3d 468, 470-71 (6th Cir. 2010).  When testing the sufficiency of the plaintiff's complaint, the Court affords it a forgiving construction, accepting as true all non-conclusory factual allegations and liberally construing its legal claims in the plaintiff's favor. *Davis v. Prison Health Servs.*, 679 F.3d 433, 437-38 (6th Cir. 2012).  A district court must dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *Hill v. Lappin*, 630 F. 3d 468, 470-71 (6th Cir. 2010).

A preliminary discussion of Demirovic's federal criminal proceedings sheds some light on the claims set forth in his current complaint.  In December 2009 Demirovic was indicted along with more than a dozen others for his role in a conspiracy to traffic in cocaine in Laurel

1

County, Kentucky.[1]  Demirovic was not taken into custody at that time because he had fled to France.  In pretrial proceedings it was noted that during several recorded phone conversations many conspirators had spoken in one or more of the closely-related Southern Slavic tongues, including Bosnian, Croatian, Herzegovinian, Montenegrin, and Serbian.  Demirovic speaks primarily Bosnian, and while he is fluent in spoken English he is "not comfortable" reading written English.  Accordingly, since his arrest in 2015 the Court has provided him with an interpreter in his criminal proceedings.

In October 2017, Demirovic reached a plea agreement with the government.   Prior to sentencing, his counsel moved for a psychological evaluation to determine his competency to plead guilty, noting that while Demirovic had appeared fully competent during plea negotiations, he had become palpably more anxious since the issuance of his Presentence Investigation Report.  Counsel further noted that Demirovic self-reported being a war refugee from Bosnia; had previously attempted suicide in a French jail; and had been placed on suicide watch in December 2017 while housed at the Pulaski County Detention Center ("PCDC").

A psychological evaluation was conducted by Dr. Jessica Micono in May 2018 at a federal prison in Englewood, Colorado.  Her report indicated that Demirovic's mother was abusive when he was growing up and that he was abused while in a group home in Bosnia.  It further indicated that beginning in France in 2015 he was treated for post-traumatic stress disorder with prescriptions for antidepressants, anti-anxiety medication, and an antipsychotic.  Notable for its possible relevance to this case, Demirovic reported to Dr. Micono that after he

---

[1]  Plaintiff's last name in his current criminal case is spelled "Demerovic."  In a separate criminal case in Indiana, it was spelled "Demirovic."  *United States v. Demirovic*, No. 1: 09-CR-166-LJM-TAB-2 (S.D. Ind. 2009).  The Clerk of the Court will be directed to list "Irfan Demerovic" as an alternative designation in this case so that both alternative spellings will be associated with the plaintiff in this and other federal cases.

returned to the United States and was returned to federal custody in 2015, he had twice attempted suicide by hanging while in jail, and that he had been abused by a correctional officer. Notwithstanding that very troubling past, Dr. Micono found Demirovic to be alert and oriented during her evaluation, and concluded that he was aware of the nature of the charges against him and capable of assisting his counsel with his case. During a hearing on July 11, 2018, no party objected to that conclusion. Magistrate Judge Ingram of this Court has therefore issued a recommendation that Demirovic be found competent to plead guilty based upon Dr. Micono's testing and report. That recommended disposition remains pending as of this writing. *United States v. Demerovic*, No. 6:09-CR-63-GFVT-HAI-12 (E.D. Ky. 2009) [R. 172, 384, 520, 787, 819, 841 therein].[2]

With that background in mind, Demirovic filed his complaint in this action on June 28, 2018. [R. 1 at 6]. A note accompanying the complaint states that it was prepared in English by Perry Shananaquet on Demirovic's behalf because he speaks Bosnian. [R. 1-1]. Demirovic states from November 2016 to December 2017 while confined at PCDC, an officer Bishop harassed and "made passes" at him by: (1) winking at him; (2) saying "hey sexy" to him; and (3) through a window, looked at Demirovic and moved his hands to mime the act of fellatio. *Id.* at p. 4. Demirovic further alleges that in November 2017, Bishop touched Demirovic's nose, told him to smell his (Bishop's) hands, and then suggested to Demirovic that he had "touched his private area" with his hand before touching Demirovic's nose. *Id*. Demirovic finally alleges that on one

---

[2] The Court "may take judicial notice of proceedings in other courts of record." *Granader v. Public Bank*, 417 F.2d 75, 82-83 (6th Cir. 1969); *see also* Fed. R. Evid. 201(b)(2). Records on government websites are self-authenticating. Fed. R. Evid. 902(5); *Qiu Yun Chen v. Holder*, 715 F.3d 207, 212 (7th Cir. 2013) ("A document posted on a government website is presumptively authentic if government sponsorship can be verified by visiting the website itself."); *see also Hames v. Sepanek*, No. CIV.A. 0:13-111-HRW, 2013 WL 5235567, at *1 n.1 (E.D. Ky. Sept. 17, 2013), appeal dismissed (6th Cir. Nov. 5, 2013).

occasion in December 2017 Bishop grabbed his waist, although he does not suggest that there was any inappropriate sexual touching. *Id*. at 5. Demirovic states that he attempted to commit suicide during this period because this harassment caused other inmates to call him a homosexual. *Id*. In December 2017, federal marshals relocated Demirovic to another prison at the urging of his defense counsel. *Id*. at pp. 4-5. Demirovic has sued officer Bishop and David Moss, the Jailer of PCDC, in both their individual and official capacities, and seeks compensatory and punitive damages. *Id*. at pp. 2, 6.

With respect to the official capacity claims against both defendants, notwithstanding the implications of its label, an "official capacity" claim against a government employee is not a claim against the employee himself arising out of his conduct as an employee. Instead, it is actually a claim directly against the state or local agency which employs him. *Lambert v. Hartman*, 517 F.3d 433, 439-40 (6th Cir. 2008); *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) ("While personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law, individuals sued in their official capacities stand in the shoes of the entity they represent.") (internal quotation marks omitted). Demirovic's official capacity claims are therefore civil rights claims against Laurel County, Kentucky. But Demirovic makes no allegation that officer Bishop acted pursuant to either a formal policy or an informal custom of Laurel County, and hence his complaint fails to state a claim against it. Cf. *D'Ambrosio v. Marino*, 747 F. 3d 378, 386 (6th Cir. 2014) ("... a municipality is liable under § 1983 only if the challenged conduct occurs pursuant to a municipality's official policy, such that the municipality's promulgation or adoption of the policy can be said to have caused one of its employees to violate the plaintiff's constitutional rights.") (internal quotation marks omitted). The official capacity claims must therefore be dismissed.

4

As for PCDC Jailer David Moss, Demirovic identifies him as a defendant in the complaint, but he makes no factual allegations against him at all. The Court assumes that as the Jailer Moss plays a supervisory role over his officers, but that role is not sufficient to impute liability against him for the acts of his subordinates: *respondeat superior* is not an available theory of liability in the civil rights context. *Polk County v. Dodson*, 454 U.S. 312, 325-26 (1981). Accordingly, "[i]n a § 1983 suit or a *Bivens* action - where masters do not answer for the torts of their servants - the term 'supervisory liability' is a misnomer." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). The individual capacity claims against Jailer Moss will therefore be dismissed.

With respect to the allegations against officer Bishop, the conduct described, if true, unquestionably constitutes harassment, is despicable, and cannot be condoned. However, it did not violate Demirovic's constitutional rights. It is well-established that verbal abuse or general harassment by a prison guard does not constitute cruel and unusual punishment in violation of the Eighth Amendment. *Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) ("Verbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief."); *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (holding harassment and verbal abuse, while "shameful and utterly unprofessional ... [they] do not constitute the type of infliction of pain that the Eighth Amendment prohibits"); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) (per curiam); *see also DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) ("[t]he use of racially derogatory language, while unprofessional and deplorable, does not violate the Constitution."); *Jackson v. Hopkins Cnty. Det. Ctr.*, No. 4:12CV-P82-M, 2012 WL 5472024, at *6 (W.D. Ky. 2012) ("[W]hile reprehensible and not condoned, racial epithets and verbal abuse alone are insufficient to state a

constitutional violation under § 1983."). The alleged verbal comments to the plaintiff cannot form the basis of a valid Eighth Amendment claim.

The Court separately notes that officer Bishop's actions, as described by Demirovic, consisted of conduct that did not involve any physical contact between the officer and inmate, save for two occasions. On the first, Bishop allegedly touched Demirovic's nose and then suggested - truthfully or not - that he had touched his genitals before doing so. On the second, Bishop allegedly grabbed Demirovic by the waist during a phone call, a contact that Demirovic does not suggest was in any way sexual in nature. While these events are more troubling that the other, purely non-physical, events described elsewhere, the Court concludes that these two isolated incidents are not sufficient to implicate the Eighth Amendment. As to the first incident, the officer's alleged actions, while repellant, occurred briefly on a single occasion, and hence was too isolated and fleeting to constitute the kind of objectively serious harm – the "unnecessary and wanton infliction of pain," *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981) – that the Eighth Amendment was designed to prevent. Cf. *Rowe v. Bergh*, No. 2: 08-CV-162, 2008 WL 4239018, at *4-5 (W.D. Mich. Sept. 9, 2008) ("Although severe or repetitive sexual abuse certainly could qualify under this standard, a single incident of objectionable sexual touching does not meet the objective component of an Eighth Amendment claim."); *see also Jackson v. Madery*, 158 F. App'x 656, 661 (6th Cir. 2005) (correction officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards); *Johnson v. Ward*, 215 F. 3d 1326 (6th Cir. 2000) (male prisoner's claim that a male officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment) (unpublished decision).

In light of the foregoing, the Court concludes that Demirovic's allegations do not state a viable Eighth Amendment claim against officer Murphy. This is not to say that such misconduct should go unreported to the officer's superiors, and the Court makes no judgment on whether the conduct described might state a viable claim under state law. Because it is plain, however, that the facts alleged would not support the constitutional claims the plaintiff asserts here, his complaint must be dismissed.

Accordingly, it is **ORDERED** as follows:

1. The Clerk of the Court shall **MODIFY** the docket to reflect "Irfan Demerovic" as an alternative designation for the plaintiff.

2. Demirovic's complaint [**R. 1**] is **DISMISSED**, **with prejudice**.

3. The Court will enter an appropriate Judgment contemporaneously with this Memorandum Opinion.

4. This matter is **STRICKEN** from the active docket.

This 26th day of July, 2018.

*Claria Horn Boom*
CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY